IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MIKAYEL ISRAYELYAN; AND SALIENT ARMS INTERNATIONAL, LLC, Appellants, vs. AARON CHAVEZ; ADRIAN CHAVEZ; AND SALIENT ARMS INTERNATIONAL, INC., Respondents. | No. 78415 |

FILED

JUL 01 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

Appeal from district court judgment after a bench trial in a tort and contract case. Eighth Judicial District Court, Clark County; Judge Joseph Hardy, Jr.

This case arises from a business dispute. Appellant Mikayel Israyelyan and respondents Aaron and Adrian Chavez (the Chavez brothers) negotiated and took steps toward starting a firearm manufacturing business in Las Vegas. Generally, Israyelyan's role in the business was to provide certain funds and a warehouse to facilitate the business's operations, and to contribute his business acumen. The Chavez brothers were to contribute expertise in the firearms industry and already-existing operations.

In February 2014, Israyelyan, using nonparty Isromorphism Holdings, LLC,[1] made an offer to purchase a warehouse (the Warehouse).

---

[1]Isromorphism is owned in whole or part by Israyelyan but is not otherwise affiliated with any of the other parties.

20-24363

Israyelyan formed appellant Salient LLC, a Nevada LLC, shortly thereafter. Israyelyan formed Salient LLC to expand the Chavez brother's already existing California corporation, Salient Security Services, Inc., which started as a security company but began designing, manufacturing, and modifying firearms in 2011 under the tradename "Salient Arms International."

Salient LLC's articles of organization list Israyelyan and the Chavez brothers as its members and managers, but do not set forth their membership interests, state the capital each would contribute in exchange for those interests, or list the duties owed to the LLC. Nor did the parties execute a written agreement at the time Salient LLC was formed. Despite the absence of a written agreement, Israyelyan and the Chavez brothers took steps to do business under Salient LLC. Isromorphism, apparently under Israyelyan's direction, finalized its offer and entered into a commercial purchase and lease agreement for the Warehouse for $2,000,000. Pursuant to that agreement, Israyelyan, through another nonparty LLC, provided an initial deposit of approximately $132,500. Israyelyan informed the Chavez brothers he purchased the Warehouse but allegedly told them not to worry if they did not come to a final agreement regarding Salient LLC because Israyelyan could use the Warehouse for other business opportunities.

As of October 2014, Aaron Chavez advised Israyelyan to stop spending money because the terms of the business arrangement were still not agreed upon. In particular, the parties had neither agreed upon the Chavez brothers' pay nor the amount Israyelyan would contribute. But Israyelyan continued to spend money on the business and the Chavez

brothers did not stop conducting business or otherwise end discussions with Israyelyan.

Around March 2015, the Chavez brother moved themselves, their employees, and their firearms manufacturing equipment to the Warehouse in Las Vegas based on Israyelyan's statements that the Warehouse was nearly complete, that he had obtained approval to build firearms at the Warehouse, and that he obtained additional square footage for manufacturing. But the Chavez brothers arrived to discover the Warehouse in poor condition and expressed concerns to Israyelyan. And, shortly after moving into the Warehouse, the Chavez brothers learned that the Warehouse's landlord had started eviction proceedings. Israyelyan, his attorney, and the Chavez brothers met to try and come to a resolution, but it is unclear what, if anything, the parties agreed to in that meeting.

Displeased with the Warehouse's condition and the continued lack of a written agreement,[2] in May 2015 the Chavez brothers notified Israyelyan that they were ending their business relationship and would begin searching for a new business location without Israyelyan. The Chavez brothers and Israyelyan did not communicate further.

Israyelyan threatened the Chavez brothers with a lawsuit and, shortly thereafter, Israyelyan created Salient Holdings LLC. The Chavez brothers then formed Salient Arms International Inc. The Chavez brothers also entered into an indemnification agreement with a nonparty entity that allowed the Chavez brothers to log and track firearms through that entity's federal firearms license instead of Salient LLC's.

---

[2]At this time, Salient LLC had no employees and no bank account.

In September 2015, Israyelyan, individually and derivatively on Salient LLC's behalf, sued the Chavez brothers and Salient Arms International Inc. One week later, Isromorphism finalized the purchase of the Warehouse for $2,000,000. In October 2015, the Chavez brothers moved all assets associated with Salient Arms International to a new location and cancelled Salient LLC's federal firearms license a few months later. In May 2017, Isromorphism sold the Warehouse for $3,000,000 and retained all the sale proceeds.

The case proceeded to an eight-day bench trial. As pertinent to Israyelyan's claims on appeal, the district court entered judgment in favor of the Chavez brothers.[3] Israyelyan now appeals, arguing (1) the district court erred in finding that he lacked standing to recover damages suffered by a nonparty to the litigation, (2) the district court erred in finding that there was no legally binding oral contract between the parties, and (3) the district court erred in finding that the Chavez brothers did not owe a fiduciary duty to Israyelyan and Salient LLC. Based on the following, we affirm the district court's decision.

*Standard of review*

We review a district court's legal conclusions following a bench trial de novo. *Wells Fargo Bank, N.A. v. Radecki*, 134 Nev. 619, 621, 426 P.3d 593, 596 (2018). "The district court's factual findings will be left undisturbed unless they are clearly erroneous or not supported by

---

[3]Because the parties are familiar with the facts and procedural history in this case, we do not recount them further except as necessary for our disposition.

substantial evidence." *Id.* "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Weddell v. H2O, Inc.*, 128 Nev. 94, 101, 271 P.3d 743, 748 (2012) (internal quotation marks omitted).

*Standing*

Israyelyan contends the district court erroneously concluded that he lacked standing to recover damages, arguing that although the expenditures were made by nonparties, those nonparties were holding companies that he owned. We disagree.

In general, standing "consists of both a case or controversy requirement stemming from Article III, Section 2 of the Constitution, and a subconstitutional prudential element." *In re AMERCO Derivative Litig.*, 127 Nev. 196, 213, 252 P.3d 681, 694 (2011) (internal quotations omitted). While "state courts do not have constitutional Article III standing, Nevada has a long history of requiring an actual justiciable controversy as a predicate to judicial relief." *Id.* (internal quotation omitted). Thus, to pursue a legal claim, an "injury in fact" must exist. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The "injury-in-fact" analysis requires the claimant to show that the action caused or threatened to cause the claimant's injury-in-fact, and that the relief sought will remedy the injury. *See generally Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38-39 (1976). Moreover, a person acting in their individual capacity is legally distinct from the same person acting in their representative capacity. *See Mona v. Eighth Judicial Dist. Court*, 132 Nev. 719, 728, 380 P.3d 836, 842 (2016). For cases regarding limited liability companies and their members, NRS 86.381 provides that "[a] member of a limited liability company is not a proper party to

proceedings by or against the company, except where the object is to enforce the member's right against or liability to the company." *See also Gardner v. Henderson Water Park, LLC*, 133 Nev. 391, 393, 399 P.3d 350, 351 (2017).

Here, Israyelyan did not allege facts that would give him standing, as the injured parties are not parties to this lawsuit. Namely, the complained-of damages—funds used for the Warehouse—were expended by nonparties to this litigation, Isromorphism and a related entity, not Israyelyan individually. Further, those nonparties were not affiliated with the Chavez brothers or Salient LLC and, no agreement existed between those nonparties and the Chavez brothers or Salient LLC. Accordingly, Israyelyan had no standing to assert claims on behalf of those nonparty entities without those entities being parties to the lawsuit, as Israyelyan himself did not suffer an injury-in-fact. *See Simon*, 426 U.S. at 38-39. Standing aside, Israyelyan's other challenges to the district court's order do not warrant appellate relief.

*Oral Contract*

Israyelyan next argues that he entered into a legally enforceable oral contract with the Chavez brothers.[4] We disagree.

Whether a contract exists is a question of fact and requires "this court to defer to the district court's findings unless they are clearly

---

[4]The Chavez brothers never signed a written operating agreement or voted to approve an operating agreement. *See* NRS 86.101 (defining "operating agreement" as "any valid agreement of the members as to the affairs of a limited-liability company and the conduct of its business, whether in any tangible or electronic format"); *see also* NRS 86.286(1) (providing that an operating agreement must be adopted by the members' unanimous vote or unanimous written consent).

erroneous or not based on substantial evidence." *May v. Anderson*, 121 Nev. 668, 672-73, 119 P.3d 1254, 1257 (2005). For an enforceable contract, there must be "an offer and acceptance, meeting of the minds, and consideration." *Id.* at 672, 119 P.3d at 1257. "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id.*; *see also Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 378, 283 P.3d 250, 255 (2012) ("A meeting of the minds exists when the parties have agreed upon the contract's essential terms."). "Which terms are essential 'depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought.'" *Certified Fire Prot.*, 128 Nev. at 378, 283 P.3d at 255. (quoting Restatement (Second) of Contracts 131 cmt. g (1981)).

Here, the record supports the district court's finding that there was no legally enforceable contract. First, despite negotiations extending into 2015, there was never a meeting of the minds between Israyelyan and the Chavez brothers regarding essential terms such as the Chavez Brother's compensation as managers of Salient LLC. Although Israyelyan claims to have emailed a final agreement to the Chavez brothers in March 2015, at most this was merely another step in the negotiation process because the Chavez brothers did not sign that agreement. *See May*, 121 Nev. at 672, 119 P.3d at 1257 (stating that "preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms"); *Tropicana Hotel Corp. v. Speer*, 101 Nev. 40, 42, 692 P.2d 499, 501 (1985) ("When important terms remain unresolved, a binding agreement cannot exist."). And, there is no evidence that the Chavez brothers ever agreed to the terms of the alleged operating agreement; rather, the record only shows

that Israyelyan and the Chavez brothers continued to negotiate until the business relationship fell apart. Thus, the district court correctly concluded that no oral contract existed.

*Fiduciary Duties*

Israyelyan argues the district court failed to consider the substantial evidence showing that the Chavez brothers breached their fiduciary duties to Salient LLC and instead only focused on the duties owed between and amongst the individual members. Israyelyan also contends that fiduciary duties are automatically triggered at the formation of a Nevada LLC. We conclude the Chavez Brothers did not owe such duties.

In Nevada, a claim for breach of fiduciary duty requires, as a threshold, the existence of a fiduciary duty. *See Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008) (listing the three elements of the claim) (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880-81 (9th Cir. 2007) (applying Nevada law)).

Israyelyan's appellate arguments fails as he does not show NRS Chapter 86 implicitly creates fiduciary duties. Unlike Nevada's statutes covering corporations and partnerships, NRS Chapter 86 does not set out fiduciary duties owed by and between its members. *Cf.* NRS 78.138; NRS 87.210; *see also See Ela v. Destefano*, 869 F.3d 1198, 1202 (11th Cir. 2017) (finding "persuasive the argument that '[w]here [a legislature] knows how to say something but chooses not to, its silence is controlling'") (quoting *Animal Legal Def. Fund v. U.S. Dep't of Agriculture*, 789 F.3d 1206, 1217 (11th Cir. 2015)). Moreover, NRS 86.286(5) provides

> *If*, and to the extent that, a member or manager or other person has duties to a limited-liability company, to another member or manager, or to

another person that is a party to or is otherwise bound by the operating agreement, such duties may be expanded, restricted or eliminated by provisions in the operating agreement, except that an operating agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

(Emphasis added.) The Legislature's use of "if" supports our interpretation of the statutory scheme as a whole: that while members of an LLC can contract to fiduciary duties, such duties do not necessarily exist otherwise, aside from the implied covenant of good faith and fair dealing.[5] Second, Israyelyan provides no binding contract imposing fiduciary duties on the Chavez brothers here. Specifically, there was no valid operating agreement or any other valid agreement prescribing fiduciary duties.[6] Accordingly, the

---

[5]We note that in 2019 the Legislature added NRS 86.298, which expressly states that the LLC's members' duties are limited to those contracted to in the articles of organization and operating agreement, aside from the implied contractual covenant of good faith and fair dealing. That statute further suggests the Legislature did not intend for NRS Chapter 86 to impose implied fiduciary duties upon LLCs. *See* 2B Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 49:9, at 129 (7th ed. 2012) ("Where a legislature amends a former statue, or clarifies a doubtful meaning by subsequent legislation, such amendment or subsequent legislation is strong evidence of the legislative intent of the first statute."); *see also Pub. Emp.s' Benefits Program v. LVMPD*, 124 Nev. 138, 157, 179 P.3d 542, 554-55 (2008) (holding that when the Legislature clarifies a statute "through subsequent legislation, we may consider the subsequent legislation persuasive evidence of what the Legislature originally intended").

[6]Even if the alleged operating agreement was a valid operating agreement, it did not prescribe any fiduciary duties. Salient LLC's articles of organization likewise failed to prescribe any fiduciary duties.

SUPREME COURT
OF
NEVADA

(O) 1947A

Chavez brothers did not owe fiduciary duties to Salient LLC or Israyelyan under the facts of this case. Accordingly, we

ORDER the judgment of the district court AFFIRMED.[7]

_____, J.
Gibbons

_____, J.
Stiglich

_____, J.
Silver

cc: Hon. Joseph Hardy, Jr., District Judge
Law Offices of Hayes and Welsh
Jeffery A. DiLazzero
Avalon Legal Group LLC
McDonald Carano LLP
Eighth District Court Clerk

---

[7]We have carefully considered Israyelyan's remaining appellate arguments and conclude they are without merit. And we decline to consider Israyelyan's unjust enrichment argument, which he did not raise until his reply brief. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (arguments not raised in the opening brief are deemed waived).